

Telephone: (212) 446-2300
Email: jischiller@bsfllp.com

January 29, 2020

**VIA ECF**

The Honorable Naomi Reice Buchwald
District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      **Re:**   *Farmer v. Indyke et al.*,
             Case No. 19-cv-10474

Dear Judge Buchwald,

      Pursuant to Individual Rule 2(B), Plaintiff Maria Farmer hereby responds to Defendants' request for a pre-motion conference in connection with their anticipated motion to dismiss. Dkt. 13. Plaintiff's claims are timely under New York's statutes of limitation and the doctrine of equitable estoppel, and Defendants' proposed motion "to dismiss" Plaintiff's request for punitive damages is procedurally improper. For the following reasons, the Court should deny Defendants' anticipated motion in its entirety.

### I.    <u>Plaintiff's Claims Are Timely Under New York Law.</u>

      Plaintiff's claims are timely under New York's CPLR § 215(8)(a), which provides: "Whenever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises, *the plaintiff shall have at least one year from the termination of the criminal action . . . to commence the civil action*." (Emphasis added). Here, Epstein's criminal action in this District terminated on August 29, 2019. Compl. ¶ 34. Because Plaintiff filed the Complaint less than three months later, the action is timely under CPLR § 215(8)(a). Defendants' arguments against CPLR § 215(8)(a)'s application to these facts are meritless.

      First, Defendants' argument that CPLR § 215(8)(a) does not apply because Plaintiff was not named as a victim in Epstein's indictment is incorrect. New York courts have held that CPLR § 215(8)(a) is "plain, clear and unambiguous" that it does *not* require that the plaintiff be "the victim or the specific person upon whom the crime had been committed." *Clemens v. Nealon*, 202 A.D.2d 747, 749 (N.Y. App. Div. 1994).

      Second, Defendants' narrow construction of § 215(8)(a)'s "event or occurrence" language is improper, especially in light of the breadth of Epstein's indictment. The charges were not limited to crimes committed against specific victims. For example, the overt acts alleged for the sex trafficking conspiracy charge were enticing and recruiting multiple victims, "*including* minor victims identified herein." Compl., Ex. A (S.D.N.Y Indictment) ¶ 22(a) (emphasis added). As another example, the Indictment's sex trafficking count charged Epstein with the sex trafficking



of "numerous individuals . . . including but not limited to Minor Victim-1." *Id.* ¶ 24. Nor did the Indictment describe the sex trafficking conspiracy as exclusively targeting minor victims—it explicitly acknowledged that some victims were not underage at the time of the sexual abuse. *Id.* ¶ 11 ("[Epstein] knew that many of his New York victims were underage."). The Indictment was targeted at Epstein's sex-trafficking scheme as a whole, and that scheme is the event or occurrence from which Plaintiff's civil claims arose. *See Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 56–57, 62 (2d Cir. 2019) (guilty plea conceding "knowledge of the atrocities being committed in Sudan" allowed victims of the atrocities in Sudan use 215(8)(a) because causes of action arose out of defendant's general conspiracy with Sudan to violate U.S. sanctions put in place to stop atrocities). Because Plaintiff's claims arise out of this common scheme, they fall within CPLR § 215(8)(a).

The cases Defendants cite are inapposite because the criminal charges in those cases were much narrower than Epstein's, and related to events that occurred on specified dates. *See Christodoulou v. Terdeman*, 262 A.D.2d 595, 596 (N.Y. App. Div. 1999) (prosecution commenced only in connection with events on February 26, 1993 and December 28, 1993); *Gallina v. Thatcher*, No. 2017-52980, 2018 N.Y. Misc. LEXIS 8435, at *3 (Sup. Ct. Oct. 23, 2018) (indictment "charged [the defendant] for incidents occurring on three (3) specific dates"). Epstein's Indictment was much broader, covering sexual abuse that occurred "over the course of many years" "from *at least in or about* 2002, up to and including *at least in or about* 2005." S.D.N.Y. Indictment ¶¶ 1–2, 8, 20, 24 (emphases added). Plaintiff's claims are therefore timely under CPLR § 215(8)(a) because the scheme the Indictment targeted is the event or occurrence from which Plaintiff's civil claims arise.

Defendants also assert that Plaintiff's claims are untimely under New York's borrowing statute, CPLR § 202. This argument fails for two reasons. First, CPLR § 202 only applies to non-residents who are injured outside of New York, and the controlling date for determining a plaintiff's residence is the date on which the cause of action accrued, not the date on which the action was commenced. *See, e.g., DeMartino v. Rivera*, 148 A.D.2d 568, 570 (N.Y. App. Div. 1989). Under the borrowing statute, the phrases "resident" and "domicile" are not synonymous. "Rather, the determination of whether a plaintiff is a New York resident, for purposes of CPLR § 202, turns on whether [she] has a significant connection with some locality in the State as the result of living there for some length of time during the course of a year." *Antone v. Gen. Motors Corp.*, 473 N.E.2d 742, 746 (N.Y. 1984). The fact that Plaintiff currently lives in Arkansas is therefore irrelevant. At the time of her sexual assault, Plaintiff was a resident of New York, and the Complaint sufficiently alleges that fact. Plaintiff stayed in Ohio for a temporary artist in residence job at the time of her sexual assault, but worked in Epstein's New York mansion immediately before going to Ohio, maintained her apartment in New York, and returned to New York immediately after the assault. Compl. ¶¶ 39, 46, 50. Because Plaintiff had a significant connection with New York at the time her cause of action accrued, she was a resident of New York, and CPLR § 202 does not apply.

Second, even if New York's borrowing statute did apply and Plaintiff's claims were otherwise untimely, they would still not be barred because CPLR § 215(8)(a) provides for civil actions to commence within "one year from the termination of the criminal action . . . notwithstanding that the time in which to commence such action has already expired."



## II. Plaintiff Has Sufficiently Pled Facts Supporting Equitable Estoppel and Tolling.

Even if Plaintiff's claims were otherwise time-barred under New York's statutes of limitation (they are not), they would still be timely under the doctrine of equitable estoppel. Defendants assert that Plaintiff "fails to meet her burden to allege extraordinary circumstances sufficient to justify tolling or equitable estoppel." Dkt. 13 at 2. But the Complaint alleges in detail the methods of intimidation and control that Jeffrey Epstein and his co-conspirators used to deter their victims from seeking justice. Equitable estoppel applies "where it would be unjust to allow a defendant to assert a statute of limitations defense," *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006), due to "deception, concealment, threats, or other misconduct," *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675, 675 (N.Y. App. Div. 1994). The Complaint alleges that Epstein and his co-conspirators manipulated their victims using "financial power, promises, and threats to ensure that the victim returned as directed and remained compliant with their demands"; threatened Plaintiff's livelihood and threatened Plaintiff's life when she attempted to go public about her abuse. Compl. ¶¶ 25, 50, 54; *id*. at ¶ 55 ("I know you go to the West Side Highway all the time. While you're out there, just be really careful because there are a lot of ways to die there."). The allegations concerning Epstein's purposeful silencing of his victims (and Plaintiff specifically) easily provide the requisite "extraordinary circumstances" for equitable tolling.

Because equitable estoppel and equitable tolling are fact-specific doctrines, Defendants' attempt to resolve the issue at motion to dismiss is inappropriate, and any motion challenging whether or not those doctrines apply should be reserved until after the parties have conducted discovery. *See, e.g.*, *Carelock v. United States*, 2015 WL 5000816, at *8 (S.D.N.Y. Aug. 20, 2015).

## III. The Court Should Address Punitive Damages After Discovery

Federal Rule 12(b)(6) allows a defendant to file a motion to dismiss for "failure to state a claim upon which relief can be granted." Defendants' request for the Court to dismiss Plaintiff's claim for punitive damages does not relate to either of Plaintiff's clams (battery and intentional infliction of emotion distress) and does not relate to the sufficiency of the allegations in the Complaint. The issue of what type of damages to which Plaintiff is entitled should therefore be dealt with at a later stage of this litigation. *See, e.g.*, *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 536 (S.D.N.Y. 2013) (denying "motion to 'dismiss' plaintiff's request for punitive damages as procedurally premature").

Respectfully submitted,

*/s/ Joshua I. Schiller*

David Boies, Esq.
Joshua I. Schiller, Esq.
Sigrid S. McCawley, Esq.

cc: Counsel of Record (via ECF)